Good morning everyone. We're here today for oral arguments. We are going to begin with Appeal 25-2272 Brenda Koehler et al. v. Infosys Technologies Limited Incorporated et al. We'll begin with oral argument from the appellant, Mr. Lowe. May it please the Court. The District Court's sua sponte exclusion of Dr. Newmark's name-matching, as applied to employees, was hugely consequential, as that exclusion affected both class certification and summary judgment. If the trial court had wanted to address the issue, it should have issued an order to show cause and allow the parties to brief the issue. Deciding the issue sua sponte without notice was an abuse of discretion. It's a long opinion, 104 pages. The District Judge goes through a huge methodology, very nuanced discussion of the case law. Explain to us why you think that's an abuse of discretion. Well, inherently, ruling on the issue sua sponte is an abuse of discretion, where plaintiffs did not have the opportunity to address the issue as applied to employees. But it's the same methodology as applied to applicants and employees. Your expert used that same methodology. Yes, with one critical distinction, which is that for the vast majority of employees, he didn't rely on the But either way, the District Court found that he was unqualified to use that methodology because he had no experience in name recognition. So if he's unqualified to give the opinions that both your employee and applicant arguments relied on, why does it matter? Because for the employee analysis, it doesn't make a statistical difference which plaintiffs would have been able to demonstrate had they been given the opportunity. In fact, it's such a small percentage of his to perform the analysis contrary to the District Court's opinion. You don't dispute that he didn't have any experience in name recognition, do you? He admitted he did not apply it in any cases. No, I think he admitted he didn't have any experience or training in name recognition. He said he didn't have any expertise in recognizing Indian names. And he said he hadn't applied the methodology in any cases. He didn't testify as to whether he had applied it in his academic work. Well, the burden was on you, so if he did have it, then it was on you to bring that out. Yes. But if we had known that the court was considering it also for employees, which was a much more consequential issue for plaintiffs, we would have addressed the issue. There wasn't any backup expert. He was the expert, Newmark, right? He was the expert, yes. So if there's going to be an expert opinion offered in this case from the plaintiffs, it's going to come through him, correct? Yes. In the district court's opinion, she suggested that we could have added a separate name recognition expert, and we asked the court after the decision to allow us to do so. But you don't get a second bite of the apple. The law is pretty clear that the district court has a lot of discretion in managing the case. And once your expert is found unqualified, it's not a do-over. Yes. We don't take issue with the fact that she denied that request, but the court was mistaken in finding that he was not qualified. How did she abuse her discretion in making that determination, given his own admission that he had no experience in name recognition or no special training in being able to identify names of individuals of Indian descent or South Asian descent? Because the case law is clear that specific name recognition expertise is not required and that economists and statisticians are qualified to make that analysis. What case are you relying on that if you are identifying as the basis for your statistical analysis individuals who are of Indian descent or South Asian descent, that you don't have to have expertise if your sole basis for doing that is name recognition? I don't think there's any case law that says that. In paramount staffing, the plaintiffs relied on a data management expert. In Palmer v. Cognizant, the court allowed testimony from an economist. But neither of those courts said it was okay to have as the foundation of name recognition an expert who had no experience in name recognition. Well, Dr. Philip Johnson did not have experience in name recognition. And that also applies to a recently decided case from earlier this year, Sugg v. Virtusa, where Dr. David Lang, also an economist, applied with name recognition. And the court rejected a Daubert motion directed at him. And that's not cited in our briefs because it's a new case, 2026 U.S. District Lexus 6193. That's a district court opinion. It is. Which has no binding effect on us. No, but I think the reasoning in that case is persuasive as well as Cognizant and paramount staffing. And the Mateos book on name matching recognizes that the methodology has been developed in the field of statistics and statisticians are qualified to apply name recognition methodology. That wasn't something before the district court, was it? It was not. And in terms of what was before the district court, I kind of view reliability here as tied in with qualifications because I don't see any evidence presented in the Newmark report of error rates, peer review. We know it wasn't 100% accurate. So how is this method even shown to be reliable to the district court? The methodology does have a known error rate and courts have recognized that, including in the paramount staffing case. Where can you point to that in Newmark's report or anything before the district court? It was not in the Newmark's report. It was not before the district court. But the point is that because it was a sua sponte ruling, we don't have a full opportunity to present that information to the district court. But that information as to reliability and qualifications went toward your experts' ability to opine on the and discriminate the statistical analysis, whether it's employees or applicants. So you had the opportunity because that issue was fully briefed in the Daubert motion. Your Honor, in our opposition, I think we devoted one page to the issue. This is docket entry 123, page 19. Yes. Had we known that the issue was being raised as to the core of our case, we certainly would have devoted more than a single page to the issue below and would have done a more thorough job of explaining the case law and the academic literature to the court. In retrospect, that was a mistake not to do it for the applicants. But had we known, we certainly would have done a better job in the first instance below. This court has rejected a requirement that plaintiffs must move for reconsideration to preserve an objection to a sua sponte ruling in Stone v. Morris and English v. Cowell. And in the two cases cited by emphasis on the waiver issue, the plaintiffs in both cases did present their positions on the issue in briefing. In Duncan Place, the court invited position papers and the plaintiff made three responsive filings. In Parks, citing O'Connor, it was dealt with a reconsideration of an expert issue that had already been addressed below. And while this court need not reach the merit of the sua sponte ruling, the incorrectness of the decision underscores the problem with a sua sponte ruling. Emphasis had a clear reason for limiting its name challenge to applicants, which was that for the vast majority of employees, South Asians were identified by country of birth as reflected in the record, which the district court seems to have overlooked. Emphasis admitted during oral argument in discussing the applicant-employee distinction that, quote, people who do get a job, you can identify their national origin. So based on the record, there's a clear distinction between employee and applicant analyses. And Dr. Newmark's report made clear that he relied heavily on internal emphasis data on place of birth for employees, not name matching. On remand, plaintiffs will be able to demonstrate that given the small percentage of employees subject to name matching, even a large error rate in name matching would not affect the statistical significance of Dr. Newmark's results. This court in Stallings v. Ryobi technologies reversed the exclusion of an expert in similar circumstances, where a substantial change in assumptions would not have affected the results of the analysis. And Dr. Newmark will show that misclassifications understate disparities. And I think that's something that is important that would apply only to the employee analysis and that he did not have an opportunity to present because of the sua sponte nature of the rule. Mr. Lowe, do you agree that you can't prevail on your class certification arguments if the court affirms the exclusion of your expert? In other words, do you agree that you need the testimony of your expert in order to prevail on class certification? Either the testimony of the expert or separately the plaintiffs requested that they be allowed supplemental briefing on. Based on the record that was before the district court, do you agree that you need your expert's opinions in order to prevail on class certification? Yes, with the... Because you relied on him for numerosity and predominance and I think he probably goes to commonality as well. Yes. We would agree with that. Counsel, can you touch on the people fluent data for a moment here? I was probably asking questions about this in a bit because I'm a little troubled that wasn't turned over but at least my review of the transcript says that the magistrate judge provided you every opportunity to ask for some remedy for that. Perhaps you were hoping for a different ruling from the district court and just wanted the litigation to proceed but that's at your own risk. Well, yes, except that when we did ask for it, the court was required to apply the correct legal standard which the court did not do. Obviously, we should have asked for it sooner and we regret that but taking the record as it was, the court should have applied the pioneer factors in deciding whether to allow supplemental briefing on that issue. Did you even bring up Rule 6? The court said that she did not want briefing on the issue. Had we been allowed to brief the issue, certainly we would have but the court did not entertain our oral argument or written briefing on whether we should be allowed to supplement with the people fluent data and we had concerns about moving the case forward. As the record reflects, it took the court eight and a half years to decide summary judgment. So we were trying to move the case along. It left an optimal litigation decision on our part but under the circumstances, there was reasons for that. But you had at least five years from the motion to exclude the opinions and the court's ruling on it to ask for this information and you appeared before the magistrate judge multiple times and the magistrate judge invited you to come back with a specific request or with supplemental briefing on the data and you never took the magistrate judge up on that invitation. So how can that be error on the court's part? Well, we did come back as soon as that motion was decided but the error on the court's part was when we did ask for supplemental briefing. But what did you do for the five years before that? That's my point. You knew this. The motion to exclude the expert was filed in December of 2016 and you were before the magistrate judge in 2017 and it looks like a couple times and the district court didn't rule on the motion to exclude until 2022. So why didn't you? You knew based on the motion to exclude that this information would be important to you and you didn't ask for it at any point during that five-year period. So why is that on the district court? Well, we were expecting it would not be necessary because we'd be able to rely on Dr. Newmark. Most of that time we spent waiting for the court to rule on fully brief motions which we were hoping would obviously be a matter of months, not years. The judge will reserve the remainder of your time. Thank you. Thank you, Mr. Lowe. Mr. Paul, we'll turn to you now for argument on behalf of the appellee. May it please the court. I'd like to start by making four short high-level points that may help cut through this mountainous record and make this appeal a little simpler to resolve. First, plaintiffs did not object when the district court excluded Newmark's employee studies either at the hearing held shortly after the Daubert ruling specifically set to discuss proposed next steps or in the two-and-a-half years of litigation that followed. And in any event, plaintiffs had ample opportunity to defend these studies and that effort failed. That takes care of the sua sponte issue. Second, Newmark admitted he had no expertise or experience in name matching and plaintiffs presented no evidence, as Judge Kohler has observed, that his opinions were reliable other than his say-so. That takes care of the expert admissibility issue and also the class certification issue and the claims for disparate impact, which plaintiffs admit depend in the first instance on the admissibility of Dr. Newmark's opinions. Third, plaintiffs admit that they had the raw data underlying the people fluent reports from the start. Those reports simply presented the data in a different format. And even if the people fluent reports were somehow a difference maker, plaintiffs knew they didn't have these reports before Infosys ever filed for summary judgment. Yeah, but isn't that just playing games with discovery? I mean, there was a request for demographics or statistics of Infosys United States workforce, and you have this people fluent analysis, and it's not turned over. Infosys believed that it had produced everything that it was required to produce. It had produced 65 spreadsheets of all of its employees and all 250,000 applicants during the relevant time. That raw data underlies the people in fluent reports. I used to hear a lot of numbers about how much discovery was turned over when I was a magistrate judge, and the numbers... That's not a defense for it, but we didn't turn this over. You could have turned over millions of documents. This was huge litigation. You've got what... Granted, there's some data that exists elsewhere, but this isn't exactly helpful for you, and it sure seems to me that it was requested. Understood, and the magistrate ultimately thought that it was requested, and the plaintiffs requested sanctions, and that request was denied. And do you have any defense for whether or not it was in fact requested? You're saying the magistrate judge found that, but do you have any basis that you can defend for not turning that over? Well, you'd have to look at our response to the motion for sanctions, but number one, Emphasis believed that it had produced everything it was required to produce, and secondly, it cited the sort of general vagueness of the request. Those were essentially the two grounds that Emphasis cited in opposing the motion for sanctions, which was denied, and they did not seek to appeal that issue, so it's not before the court. The other point I want to make about that is Mr. Lowe indicated, well, we didn't think it was necessary to bring up this issue because we were relying on Dr. Newmark's reports. Well, that suggests the decision to wait to bring up this issue was tactical. As I say, they knew about this data before we ever filed for summary judgment, and they did not file a Rule 56D motion asking to defer the proceedings. They waited instead, as Judge St. Eve has observed, nearly six years after summary judgment was complete and nearly six years after they had received the People Fluent data. Maybe this is a better question for Mr. Lowe, but People Fluent produced data. Did that give them everything they were requesting, or is there still additional People Fluent discovery that they did not obtain from your client? No, my understanding is they received all of the People Fluent reports that were relevant to the case, and they knew about them by June of 2016, which was before we filed for summary judgment, and they received the production of the People Fluent reports in January of 2017. They didn't ask to file a summary judgment brief until they lost the Dauber motion six years later, and at that point the only reason they were doing that was because they wanted to backfill their summary judgment arguments based on this data. I don't think it would have helped them anyway, but the district court certainly did not abuse her discretion by denying a motion to request to file a supplemental brief six years after the fact, particularly when plaintiffs did not even cite Rule 6, the pioneer factors, or excusable neglect. She could not possibly know that they thought that if this data had just been produced it would have been a difference maker. They just made a bare oral request for a brief, and that was an alternative to a request to name a new expert and for more discovery. It wasn't even their primary request, and so the district court denied it, and as Judge St. Eve observed, and Judge Pepper laid this out in all the gory detail in her ruling on this issue, plaintiffs had three separate opportunities served on a silver platter by the magistrate judge to request the opportunity to file a supplemental brief, and they didn't take any of them. So that's the people fluent issue. Can you address Mr. Lowe's arguments about the impact of what he has called the sua sponte argument? Yeah. That goes to really whether the error, I think, was prejudicial. So let me start by... Do you agree with the premise that it was sua sponte to begin with? I don't. I don't for a couple of reasons. Well, first of all, the district court, as I think you observed, excluded the employee studies for precisely the same reason she excluded the applicant studies. Dr. Newmark admitted he wasn't qualified, he had no experience in name matching, and plaintiffs produced no evidence that his opinions were reliable. If they're unreliable as to applicant studies, they're going to be unreliable as to employee studies. Secondly, this court has said in a case called Perez, which plaintiffs themselves cite, that a district court is entitled to rule on expert admissibility sua sponte as long as the district court has given the party an opportunity to be heard. They were heard. They filed a 26-page brief, 561 pages of exhibits, and Judge Pepper then held a nearly two-hour-long hearing where she said she was, quote, very interested in hearing about Dr. Newmark's, about the reliability of Dr. Newmark's opinions, and there's no dispute that his name-matching methodology was applied to all of his studies, applicants and employees, hiring, promotion, and terminations. So they had ample opportunity to be heard. The opinions were excluded. The applicant opinions were excluded for the same reasons the employee studies were excluded, and vice versa, and then let me address whether the error was even prejudicial. First of all, there were originally three classes at issue. They've abandoned the promotion class. There's no plaintiff that brings a promotion claim anymore. The sua sponte issue is irrelevant, of course, to the applicant issue because they concede they had notice as to we were seeking to exclude his opinions on the applicants, which I can't help but note that plaintiffs stunningly suggest after about a decade of litigation that they didn't even think that they were going to get class cert on the hiring class anyways. So that leaves us with the termination class. And plaintiffs say, well, we could have used this people-fluent data which shows the national origin and race of 85% of employees to show that any misclassification error would have understated any disparity. And there are three problems with that. First of all is waiver. They could have made that argument in the district court because it goes to the error rate of Dr. Newmark's opinions. And again, his name-matching methodology was applied to each and every one of his studies, and they didn't raise this issue. They didn't argue that, well, whatever misclassification errors there might be, it really is inconsequential. They didn't say that. Secondly, this understatement point hinges on employee data that really has no bearing on Newmark's opinions anymore. That's because in his original termination analysis, he included deputies. He subsequently acknowledged that that was a mistake because he didn't understand how they were coded in the data and assumed that they were almost never terminated. So in his supplemental report, he corrected for that error, that's his word, and excluded deputies. The only reason we know about the national origin of people is because we have national origin data for people in India. We don't typically have that for employees. And then the third point I want to make about this harmless error issue is it's obviously wrong. It depends on who's misclassified. Suppose Dr. Newmark misclassified 1,000 terminated Asians as non-South Asian. That would overstate the percentage of non-South Asian terminations, that is, the protected group, and understate the percentage of South Asian terminations. But whether that, in fact, is true, we just don't know because they never laid the foundation for that argument when they had the opportunity. Mr. Paul, a question concerning the individual defendants.  Specifically, Hand Loser. Yes. A district court grant summary judgment to the defendants on Hand Loser's disparate treatment claim found that Hand Loser had not shown pretext. The defendant's declaration was that there was a RIF and Hand Loser qualified under the RIF. That portion of the district court's opinion is pretty scanty. Page, page and a half. I wonder if the district court properly considered evidence to the contrary and whether that might create a genuine issue of material fact with regard to Hand Loser, specifically that Hand Loser was initially told he had a 3 rather than a 4 on the exam, that 14 of the 50 employees subject to the RIF had better scores than 4 and he had not heard about the purported RIF. Is there an issue with regard to the summary judgment grant by the district court against the plaintiff, Hand Loser? No. He received two performance ratings. The first was a individual performance rating and he agreed that he should have received a low individual performance rating because he had missed a revenue target by $400,000 and he had no new open accounts, which lowered his performance rating on the most weightiest scores. He agreed he should get a lower score. That score was then, and this is undisputed, was put into a bell curve and it came out to a company-wide performance rating and there's no question that once that happened, he got the lowest score possible. Secondly, a person with personal knowledge of the RIF who implemented the domestic component of the RIF tendered an affidavit explaining that this RIF was in fact real, it occurred, and that it affected the lowest performing people in the prior appraisal cycle, which was April to September of 2012, and there is no contradictory evidence. Whether he remembers being told about the RIF or not, the fact of the matter is that personal declaration is undisputed. And the last thing I would point out is our expert looked at the RIF data and concluded that, number one, the 50 people who were RIF'd did receive a low 4 score. The evidence that they cite suggests that there were people who received higher scores that were subject to the RIF or not subject to the RIF. That's for different appraisal cycles. The only appraisal cycle that mattered for the RIF was the April to September 2012 cycle. There's no question he received the lowest he could possibly get. The final thing I would say about Mr. Handloser is that 50 people were part of that RIF and 29 of them were Asian. So there's not a question of fact as to Mr. Handloser's score. We'd ask the Court to affirm. Thank you. Thank you, Mr. Paul. Mr. Lowe, we'll go back to you now for rebuttal argument. The plaintiff's directed the district court to the case law and name matching, including Teamsters, but the court got the case law wrong. Courts have repeatedly admitted name matching, and I have not seen cases requiring a linguistic expert to allow that methodology. Dr. Newmark is familiar with the literature on name matching, which was demonstrated by the fact that his methodology closely followed the standard name matching methodology recognized by the experts such as Dr. Mateos. Mr. Lowe, I'm going to interrupt you. Sorry, but I want to ask you the same question I asked Mr. Paul. Once your clients received the PeopleFluent data and discovery directly from PeopleFluent, did you have everything you had requested, or were there still missing documents from the defendant from your perspective? Well, we don't know what we don't have. I don't think we're aware of anything that was missing. Okay, so as of I think it was January of 2017, you went directly to PeopleFluent, but you got what you were requesting directly from PeopleFluent, correct? I think that's correct. Okay, thank you. This court found in Stewart-Heidel that a harmless error argument should not be considered in connection with an improper sua sponte ruling because the record is not fully developed, and I think that's critical here, where there are arguments that we would have made had we been unnoticed that the employee analysis was being considered. Plaintiffs did not abandon the deputy analysis. They defended it at oral argument on the basis that deputies compete with local workers for jobs in the U.S. That's in the record at RA 47 to 49. Dr. Newmark performed an alternative analysis without deputies, but that did not repudiate his original analysis. Rather, it reinforced the conclusions in the original analysis. The RIF involving handloser was not supported by any discovery. There is a bare affidavit, which a fact finder would be entitled to disbelieve. And just critically, the plaintiff's response to the Daubert motion would have been different had they been unnoticed that the employee analysis, which was at the heart of their case, was at issue, and instead devoted, as I mentioned, a single page to it. There was a wealth of case law in academic literature that Dr. Newmark was fully qualified. The methodology is well accepted and peer reviewed and has a known error rate. Thank you. Thank you, Mr. Lowe. Thank you, Mr. Paul. The case will be taken under advisement.